[No. 28568. *En Banc.* September 28, 1942.]

WILLIAM RAPP, *Appellant,* v. GEORGE F. ELLIS *et al.,*
*Respondents and Cross-appellants.*[1]

¹Reported in 129 P. (2d) 545.

*Fred M. Bond,* for appellant.

*Wright & Wright,* for respondents and cross-appellants Ellis.

*Roy W. Seagraves,* for respondent Hart Mill Company.

BEALS, J.—This action was instituted by William Rapp, as plaintiff, against George F. and Dora Ellis, husband and wife, and Hart Mill Company and Seattle First National Bank, corporations. Plaintiff sought reformation of a contract between himself and Mr. Ellis as against the latter, also demanding judgment against Mr. Ellis for damages on account of alleged breach of contract. Plaintiff also prayed for foreclosure of a lien which he claimed against certain logs belonging to Ellis, and asked that this lien be declared superior to claims against the logs on the part of defendants Hart Mill Company and Seattle First National Bank.

Defendant bank was not served with process, and made no appearance in the action. Defendants Ellis answered the complaint, denying that plaintiff was entitled to recover either for breach of contract or upon his alleged claim of lien. These defendants, then, by way of a cross-complaint, asked for judgment against plaintiff on account of an alleged overpayment in the sum of $194.88, and demanded judgment for $6,650,

by way of damages suffered by them because of the burning of certain of their timber, defendants alleging that the fire was caused by the negligence of plaintiff. Defendant Hart Mill Company admitted that it had purchased logs from defendants Ellis, but denied that the logs were subject to any lien in plaintiff's favor.

The case, being equitable in its nature, was tried to the court without a jury. The court made extensive findings of fact, and from them drew conclusions of law in favor of defendants Ellis, followed by a judgment in their favor and against plaintiff, for the sum of $124.19. From this judgment, plaintiff has appealed, and defendants Ellis have cross-appealed.

In support of his appeal, appellant prepared a statement of facts; but the same, having been stricken on motion, is not before us, leaving for consideration only the pleadings, together with the findings of fact, conclusions of law, and decree.

Respondents and cross-appellants Ellis have appeared by their counsel; respondent Hart Mill Company, which took no cross-appeal, has filed a brief asking that, on affirmance of the judgment, it be allowed damages as for a frivolous appeal as against it.

Appellant's opening brief, having been filed before the statement of facts in the case was stricken, is naturally of little assistance, as errors assigned based upon matters contained in the statement of facts, in the absence of such a statement, cannot be considered. Respondents contend that, upon the record before us, the judgment should be affirmed on appellant's appeal and reversed on their cross-appeal, while appellant in his reply brief argues that the findings of fact not only do not support the decree, but contradict the same, and that for this reason the decree should be reversed on his appeal and affirmed on respondents' cross-appeal.

■■ While under the statute appeals in equitable actions are heard in this court *de novo*, it has for many years been our practice in such appeals, in the absence of a statement of facts, to examine the record and determine whether or not, in the light of the findings of fact and conclusions of law when made by the trial court, the decree appealed from should be affirmed or reversed. While in an equitable action the superior court is not required to make and enter findings of fact, when such are made by the court, this court on appeal has always held that such findings were entitled to due consideration.

In the early case of *Roberts v. Washington Nat. Bank*, 11 Wash. 550, 40 Pac. 225, this court held that "findings of fact in an equity case and in one at law are placed upon substantially the same basis," although in an appeal from a decree in equity, findings of fact do not stand upon the same footing as the verdict of a jury. It was held, however, that, when the court has entered findings in an equitable case, exceptions must be taken thereto by a party desiring to test the correctness of the findings on appeal.

In the case of *Watson v. Sawyer*, 12 Wash. 35, 40 Pac. 413, an equitable action in which was sought the foreclosure of a mortgage, the plaintiff appealed from an adverse decree, but brought before this court no statement of facts. The respondent having moved to dismiss the appeal because of the absence of any statement of facts, and for other reasons, the motion was denied, this court saying:

"As to the second ground: It is not necessary that there should be any statement of facts in order that an appeal should be entertained by this court for the purpose of determining whether or not the conclusions of law and the decree were warranted by the findings of fact."

The judgment appealed from was reversed.

This case was followed in the case of *Seattle v. Smithers*, 37 Wash. 119, 79 Pac. 615, in which a decree in an equitable action was reversed, the record containing no statement of facts. In the recent case of *Cooper & Co. v. Anchor Securities Co.*, 9 Wn. (2d) 45, 113 P. (2d) 845, is found the following:

"The rule is that findings upon conflicting evidence in an equity case will not be disturbed on appeal unless it can be said, and we cannot so say in the case at bar, that the evidence preponderates against them. *Peterson v. Ogle*, 110 Wash. 610, 188 Pac. 768; *Yarnall v. Knickerbocker Co.*, 120 Wash. 205, 206 Pac. 936."

In the following cases, this court has entertained and determined appeals from decrees entered by the superior court in equitable actions in which the record on appeal contained no statement of facts, but findings of fact and conclusions of law only: *Gould v. Austin*, 52 Wash. 457, 100 Pac. 1029; *Yakima Grocery Co. v. Benoit*, 56 Wash. 208, 105 Pac. 476; *Architectural Decorating Co. v. Nicklason*, 66 Wash. 198, 119 Pac. 177; *Berens v. Cox*, 70 Wash. 627, 127 Pac. 189; *Mondioli & Stewart v. American Building Co.*, 83 Wash. 584, 145 Pac. 577; *Smith Co. v. Hardin*, 133 Wash. 194, 233 Pac. 628; *Bannister v. Cavanaugh*, 175 Wash. 451, 27 P. (2d) 695; *Ernst v. Guarantee Millwork, Inc.*, 200 Wash. 195, 93 P. (2d) 404.

In the case of *Holden v. Romano*, 61 Wash. 458, 112 Pac. 489, in considering an appeal from an equitable decree, the record containing findings of fact but no statement of facts, this court said:

"Furthermore, in the absence of a statement of facts we must presume that the testimony supports the findings, and would deem the complaint amended if need be. We are further of opinion that the findings support the decree, but if they do not, that fact of itself affords no ground for reversal. This is an equity case and no

findings were necessary. In such cases it is only where the findings are complete in themselves, and show affirmatively that a different judgment should have been rendered, that this court will interfere or reverse the judgment of the trial court."

In the case of *Katterhagen v. Meister,* 75 Wash. 112, 134 Pac. 673, an equitable action, this court on appeal by the plaintiff modified the decree appealed from, in the course of the opinion using the following language:

"It is next contended that, the evidence not having been brought to this court, there is nothing to review. We have also held that a statement of facts is not necessary where the appellant desires to raise the question that the facts found do not warrant the conclusions of law or the decree. [Citing cases.] The precise point urged by the respondents, however, is that, this being a case of equitable cognizance, no findings were necessary; that the findings were incomplete, and hence that it will be presumed that the evidence sustains the decree. [Citing cases.] These cases merely hold that findings are not necessary in equity cases, and therefore that such cases will not be reviewed, in the absence of a statement of facts or bill of exceptions, where the findings are defective or incomplete, the presumption being that the evidence warrants the judgment. The finding under review is neither defective nor incomplete, but on the contrary, it is full and specific."

In the case of *Wilkeson v. Rector, Etc., St. Luke's Parish,* 176 Wash. 377, 29 P. (2d) 748, an appeal by plaintiff from an adverse decree entered in an action for injunctive relief, the statement of facts having been stricken on motion, this court denied a motion to dismiss the appeal, saying:

"Respondents have also interposed a motion to dismiss the appeal. The contention is that, this being a case of equitable cognizance and triable *de novo* in this court, there is no record upon which it can be so tried, since the statement of facts has been stricken. [Citing cases.] In those cases, the record consisted only of the pleadings and the order or decree appealed from.

"In the case at bar, the court made findings of fact and, by reference, made certain exhibits a part of the findings. These exhibits are, therefore, a part of the record. [Citing cases.]

"It is, of course, unnecessary for the trial court to make findings in a case of equitable cognizance, but in cases where it does, this court will not dismiss the appeal, even though there be no statement of facts, if assignments of error are predicated on the sufficiency of the findings to support the decree.

"In reviewing the record in such cases, however, this court starts with the presumption that the decree is correct; that it is entitled to every presumption necessary to sustain it, in the absence of an affirmative showing in the finding itself that the necessary facts to sustain it did not exist."

The rule laid down in the case last cited is correct, and, in such a situation as that here presented, an appeal from a decree entered in an equitable action in which the court entered findings of fact, the record on appeal containing no statement of facts, we shall consider the appeal and examine the record for the purpose of determining whether or not the findings show affirmatively that the decree appealed from is erroneous.

It may be considered that the early case of *Enos v. Wilcox*, 3 Wash. 44, 28 Pac. 364, states a contrary rule, and the opinion in the case contains language which affords some support to that contention. A critical examination of the case, however, discloses the fact that the language referred to was mere dicta. The action was one in equity, and on motion this court struck the statement of facts. Counsel for appellants then urged that this court should still consider errors which appellants contended appeared in the record and required a reversal of the judgment. It appeared that these errors all referred to the findings of fact and conclusions of law made by the trial court. After calling

attention to the fact that in equitable causes no findings were necessary, the court said:

"In such cases the findings of fact take the place of the verdict of a jury, and if the conclusions of law drawn from the facts as found by the court are unwarranted, or if the judgment is not supported by the findings, then such judgment will be reversed by the appellate court for error."

Continuing, the court noted that, in the absence of a statement of facts, it was impossible on appeal to determine what facts were or were not proven, and that, as in an equitable action the appellate court must draw its own conclusion from the testimony, the appellate court could not be bound by any conclusions or findings of the trial court. The court being of the opinion that there was nothing before it upon which the court could base a review of the judgment appealed from, the judgment was affirmed. It does not appear that the appellants, while accepting the findings of fact and conclusions of law, urged that this court consider the question of whether or not the decree appealed from was supported or directly contradicted thereby. Clearly, this court could only affirm the judgment.

The case cited is not an authority against the many cases in which this court considered and determined appeals from equitable decrees in which no statement of facts was contained in the record on appeal, and in which findings of fact entered by the trial court were contained in the record.

We shall now consider the case for the purpose of determining whether or not the findings of fact affirmatively show that the conclusions of law drawn therefrom by the trial court, and the decree which was entered pursuant thereto, are erroneous.

The trial court found that July 26, 1939, appellant

and respondent George F. Ellis (who will hereinafter be referred to as respondent),

" . . . in pursuance to previous preliminary oral negotiations, conversations and discussions had between them, entered into by the signing, execution and delivery thereof the following written contract, to-wit:

" 'This Agreement, made this 26th day of July, 1939, between George F. Ellis, party of the first part, and William Rapp, party of the second part,

" 'Witnesseth, that the said party of the first part agrees to pay the said party of the second part $4.00 per thousand for yarding and loading logs in parts of timber on the North half of Section 20, Twp. 12, North Range 7 West, and party of the first part further agrees to pay party of the second part as soon as the logs are in the water, scaled and sold.

" 'The said party of the second part agrees to pay all expenses incurred by his operation and to keep logs free and clear of liens, attachments, garnishments, etc., and further agrees to start logging as soon as the party of the first part is ready. Party of the second part agrees to perform all operations in a businesslike manner, to accept water scale, and further agrees not to take any of his equipment off lands mentioned until serving party of the first part sixty days' notice, unless agreeable with the party of the first part.

" 'The party of the first part is to have full supervision of this work at all times; party of the second part agrees to sky-line all logs yarded with the cat for $1.00 per thousand to load all logs yarded with the cat for $1.00 per thousand.

" 'In Witness Whereof, the parties to these presents have hereunto set their hands and seals this 26th day of July, 1939.

" 'GEORGE F. ELLIS
" 'WM. RAPP' "

The trial court further found:

"That at the trial it appeared that there were no witnesses present during the negotiations between the plaintiff and the defendant George F. Ellis, during their discussions or negotiations pertaining to the subject

matter of said contract, that they at no time prior to the preparation and during the preparation thereof had any controversy in reference to the terms, conditions or the language finally embodied in said instrument, and that both the plaintiff and the defendant George F. Ellis in this cause testified that there was nothing told or stated to Clyde L. Lewis, a notary public who prepared said contract, in reference to the subject matter thereof other than what the plaintiff and George F. Ellis had discussed and negotiated in reference to between themselves prior to the execution and delivery of said contract, that there was nothing written into said contract other than what the plaintiff and defendant had talked about and negotiated in reference to and that said contract was in the form which both parties intended it should be. The court further finds that the minds of both parties met in reference to the substance and subject matter expressed in said contract and that everything is contained therein upon which the minds of the parties met and that there was no term, condition or substance of the contract or agreement upon which the minds of the parties had finally met that was omitted or left out of said agreement."

The court also found:

"That the plaintiff and the defendant George F. Ellis fully understood at the time that said contract was executed and delivered, that the extent to which the plaintiff's operations would extend would depend upon conditions as they developed, and as they were encountered and controlled largely by the desires, the wishes and the exercise of the judgment of the defendant George F. Ellis as to how long the plaintiff's operations would continue and the land over which they would extend and over which the defendant George F. Ellis might decide to allow the plaintiff to operate, log, yard and load; that both parties to said contract fully understood that aside from the operations which the plaintiff was contracting to carry on, that the defendant George F. Ellis had other subcontractors operating in, about and concerning the taking and the recovery and the marketing of the logs upon the area or the parts of land upon which the plaintiff might operate; that

the defendant George F. Ellis had a falling and bucking crew or crews in, upon or about said land, working under subcontract, he had his own crew operating his 'cat' [a caterpillar tractor] in yarding and loading logs, and in building roads and he also had contracted for the trucking, hauling and removal and marketing of said logs as they were actually loaded. That in order to coordinate plaintiff's operations that he had contracted to carry on, with the operations of the other subcontractors, or units engaged upon said project, it was necessary for the defendant George F. Ellis to and he did by the terms of said contract, reserve unto himself the right to supervise the plaintiff's operation for the purpose of determining whether plaintiff's operations were being had and done in accordance with the terms of said contract, and in requiring it to be so done to the end that the result sought to be accomplished by the plaintiff's operations under said contract would be had and accomplished, but that under the terms of said contract the defendant George F. Ellis, and as the operations were actually carried on by the parties, had no right to control the mode or manner by which the plaintiff would carry on, do and perform the work, and accomplish the result desired and intended by both parties to said contract, and that actually at no time was the mode or manner in which the plaintiff did or attempted to do and perform his work, or carry on his operations attempted to be dictated or supervised by the defendant George F. Ellis, excepting in certain minor particulars in reference to which the defendant George F. Ellis made suggestions to the plaintiff which said suggestions the plaintiff at times followed and adopted, evidently because said suggestions were in the plaintiff's own interests in accomplishing the result ultimately to be sought and obtained."

As to the termination of the contract, the court found:

"That the plaintiff's operations were finally terminated on or about the third day of August, 1940, the defendant George F. Ellis determining and concluding on or about said date, as he had a right to do under the terms of said contract, that he had no further need for

any further operations on the part of the plaintiff upon the parts of land as described in said contract, that the plaintiff thereupon removed his equipment from the premises, did not thereafter perform any further operations thereon, took other employment in the engagement and employ of a third party of a nature from which he obtained substantial remineration, but to the extent of which the evidence did not fully disclose, and wherein the plaintiff was still employed at the time of trial."

The court then found that under the contract there had become due to appellant from respondent, as the result of appellant's logging operations, the total sum of $13,201.40, and that respondent had overpaid appellant in the sum of $124.19.

Finally, the court found that appellant, believing that respondent owed him a further sum, filed in the office of the auditor of Pacific county a notice of claim of lien upon certain of respondent's logs, being the lien which appellant sought to foreclose in this action.

As to appellant's contention that under the contract he had the right to continue to log lands belonging to respondent, the court found that under the evidence appellant had no such right, and that if he had, under the contract, continued logging operations appellant would have made no profit therefrom. Concerning respondent's claim against appellant for damages on account of the fire, the court found certain facts which clearly justify the court's conclusion that respondent should not recover damages against appellant.

The decree which the court entered adjudged that the contract between the parties resulted in the establishment between them of the relationship of owner and independent contractor, and not the relationship of master and servant; that the contract set forth in the findings contained the entire agreement between the parties, and should not be reformed or changed. By

the decree, appellant's causes of action were dismissed, respondent's cross-complaint for damages against appellant was dismissed, and respondent was awarded judgment against appellant for an overpayment of $124.19. The action was dismissed as to respondent Hart Mill Company, which was awarded its costs against appellant. Respondent Ellis was also awarded costs against appellant.

■■ On this appeal, appellant argues that the findings of fact affirmatively show that the contract between the parties established between them the relationship of master and servant, rather than that of owner and independent contractor. Appellant stresses that portion of the contract which provides that "the party of the first part [respondent] is to have full supervision of this work at all times," arguing that this provision requires a holding that the contract was simply one of master and servant.

In the case of *Johnston v. Seattle Taxicab & Transfer Co.,* 85 Wash. 551, 148 Pac. 900, the court used the following language:

"The general rule is that an independent contractor is one who renders services to another in the course of an independent occupation, representing the will of his employer only as to the result of the work and not as to the means by which it is accomplished; the chief consideration being that the employer has no right to control as to the mode or manner of doing the work; but a reservation by the employer of the right to supervise the work for the purpose of determining whether it is being done in accordance with the contract does not affect the independence of the relation."

In the case of *Hubbard v. Department of Labor & Industries,* 198 Wash. 354, 88 P. (2d) 423, we said:

"An independent contractor is one who, while rendering service in the course of an independent occupa-

tion, represents the will of his employer only as to the result of the work, and not as to the manner or means by which it is accomplished. [Citing cases]

"The ultimate test by which it is determined whether the relation is that of employer and employee or that of principal and independent contractor is to inquire whether or not the employer retained the right, or had the right under the contract, to control the manner of doing the work and the means by which the result was to be accomplished. [Citing cases] These cases all hold that the chief, and most decisive, factor in determining whether the relationship is that of employer and employee or that of principal and independent contractor is the right of control over the work or thing to be done."

In the case of *McFarland v. Commercial Boiler Works,* 10 Wn. (2d) 81, 116 P. (2d) 288, referring to an independent contractor, we said:

"Although appellant might be labeled a contractor, it was not an independent contractor as defined by the law. This term has acquired a specialized meaning, and should not be confused with other terms. It designates a person who, in pursuit of an independent business, undertakes to perform a specified piece of work or to render a particular service for another without submitting to control in the manner of performance."

Upon such a record as that now before us, the court not having the benefit of a statement of facts, the decree which the trial court entered is entitled to the presumption that it is correct. The findings are manifestly complete, and for this reason it need not be assumed that the decree is supported by proven facts not included in the findings. The trial court found that respondent had no right to control the mode or manner by which appellant should perform the work called for by the contract, but merely reserved "unto himself the right to supervise the plaintiff's operation for the purpose of determining whether plaintiff's operations were

being had and done in accordance with the terms of said contract."

It also appears from the findings that this type of supervision was reasonably necessary in connection with the peculiar operations which appellant was required to conduct under the contract. Appellant was only one of a group of several engaged in similar operations, all of whose work needed to be properly coordinated to carry out an efficient plan. Such coordination would be advantageous to both contracting parties. It is also true that under the contract the extent of appellant's operations would depend upon the decision of respondent.

In view of all the facts found, it cannot be held that under the contract respondent had the right "to control the manner of doing the work and the means by which the result was to be accomplished" (*Hubbard v. Department of Labor & Industries, supra*), rather than the right to see that appellant's operations were properly coordinated for the benefit of respondent's logging business. Subject to the terms of the contract, the mode or manner by which appellant performed his contract was at all times under appellant's control.

We hold that the findings do not affirmatively show that the necessary facts to sustain the decree appealed from did not exist. *Wilkeson v. Rector, Etc., St. Luke's Parish, supra.*

The findings clearly support that portion of the decree dismissing respondent's cross-complaint for damages.

Respondent Hart Mill Company argues that it should be awarded judgment for two hundred dollars against appellant by way of damages for a frivolous appeal or one unauthorized by law, citing Rem. Rev. Stat.,

§ 1733 [P. C. § 7318]. The record discloses no basis for the award of such damages.

The decree appealed from is affirmed.

Robinson, C. J., Steinert, Jeffers, and Driver, JJ., concur.

Simpson, J. (concurring in the result)—Findings of fact and conclusions of law are not required in cases of equitable cognizance. Equitable cases are heard *de novo* in this court. To hear a case *de novo* is to try it again, another time, or try it over. A case is tried *de novo* in this court by an examination of the record made in the superior court, and this court must have the statement of facts before it in order to decide upon the facts presented.

In the early decision of *Enos v. Wilcox*, 3 Wash. 44, 28 Pac. 364, this court adopted a rule to apply to cases in equity, where the record contained findings of fact and conclusions of law, but the statement of facts was unavailable. The rule was expressed as follows:

"But it is insisted by counsel for appellants that even although the statement of facts should not be considered by the court in this case, still sufficient error appears in the record to work a reversal of the judgment. An examination of the assignment of errors discloses the fact that the errors relied on by appellants for reversal of the judgment all refer to the findings of fact and conclusions of law made by the court. But this being a cause of equitable cognizance, no findings of fact or of law were necessary. See *Kilroy v. Mitchell*, 2 Wash. 407 (26 Pac. Rep. 865). It is only in an action at law, where a jury is waived and the cause tried by the court, that findings of fact and conclusions of law are required to be filed. In such cases the findings of fact take the place of the verdict of a jury, and if the conclusions of law drawn from the facts as found by the court are unwarranted, or if the judgment is not supported by the findings, then such judgment will be

reversed by the appellate court for error. See Code, §§ 245-7.

"But in an action for equitable relief, the rule is otherwise. Such a cause comes here for trial *de novo*, and in order to so try it, this court must be put as fully in possession of the whole case as was the court below. *The testimony before the superior court in this case not having been properly brought up, it is impossible for us to determine what facts are, or are not, proven thereby; and as we must draw our own conclusions from the testimony we cannot, and should not, be bound by any conclusions or findings of the court below.* It would seem clear that this court cannot try a cause anew upon the merits without being possessed of all the facts upon which the court below acted. If proofs were taken there this court must have the same testimony before it, or a re-trial will be manifestly impossible." (Italics mine.)

Since this case, we have adhered to the rule many times. In *State ex rel. Northeast Transportation Co. v. Superior Court*, 194 Wash. 262, 77 P. (2d) 1012, it was again considered and reexamined, not only as originally announced but also as interpreted in subsequent cases. The rule was once more reaffirmed. See, also, *O'Neal Land Co. v. Judge*, 196 Wash. 224, 82 P. (2d) 535.

The condition of the record precludes us from considering any of the questions presented by this appeal. The judgment should be affirmed, because of the absence of the statement of facts.

MILLARD and BLAKE, JJ., concur with SIMPSON, J.